**[J-78-2020] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

PENNSYLVANIA ENVIRONMENTAL
DEFENSE FOUNDATION,

           Appellant

           v.

COMMONWEALTH OF PENNSYLVANIA,
AND GOVERNOR OF PENNSYLVANIA,
TOM WOLF, IN HIS OFFICIAL CAPACITY
AS GOVERNOR,

           Appellees

: No. 64 MAP 2019
:
:
: Appeal from the Order of the
: Commonwealth Court dated July 29,
: 2019 at No. 228 MD 2012.
:
: ARGUED:  September 17, 2020
:
:
:
:
:
:
:
:
:

**CONCURRING OPINION**

**JUSTICE WECHT**                                           **DECIDED:  July 21, 2021**

In *PEDF v. Commonwealth*, 161 A.3d 911 (Pa. 2017) ("*PEDF II*"), this Court recognized that the Environmental Rights Amendment ("ERA")[1] guarantees two separate rights held by Pennsylvania's people: (1) a right to clean air, pure water and the preservation of the environment (subject only to regulations that do not unreasonably impair that right), and (2) common ownership by the people, present and future, of Pennsylvania's natural resources.[2]  By amending the Constitution to include the ERA, the citizens of this Commonwealth, as settlors, established a trust whereby the natural resources are the trust corpus, the Commonwealth is the trustee, and the people are the

---

[1]      Pa. Const. art. 1, § 27.

[2]      *PEDF II*, 161 A.3d at 931.

named beneficiaries.[3] As trustee, the Commonwealth stands as fiduciary, required to conserve and maintain the trust corpus and to act toward the public natural resources with prudence, loyalty, and impartiality.[4] Applying trust law, we held in *PEDF II* that revenue generated from the sale of trust assets is part of the corpus of the trust, and cannot be redirected to the General Fund.[5]

Having established there that the ERA creates a trust, and that royalties derived from the sale of natural resources are part of the trust corpus,[6] we now examine here whether the same is true for bonus, rental, and interest payments.

When faced with this question on remand, the Commonwealth Court agreed with the Commonwealth that royalty payments are the only revenues derived from the extraction of natural resources. Based upon its interpretation of the law of trusts extant at the time of the ERA's adoption, the Commonwealth Court proceeded to hold that one-third of the non-royalty proceeds could be used for non-trust purposes, while the remaining two-thirds had to be reinvested as trust corpus. As today's Majority explains, the Commonwealth Court's holding flowed from two legal errors: (1) that the ERA created successive beneficiaries; and (2) that the ERA created income entitlements. The Majority aptly deconstructs these erroneous conclusions.

The Commonwealth Court's division of bonus, rental, and interest payments into thirds, and its authorization to the General Assembly to siphon away one-third of these revenue streams for non-trust purposes, is not only premised upon an erroneous understanding of the ERA; if left undisturbed, it also would create a perverse incentive for

---

[3]     *See* Maj. Op. at 10 (citing *Robinson Township v. Commonwealth*, 83 A.3d 901, 956 (Pa. 2013) (plurality)).

[4]     *See* Maj. Op. at 11 (citing *Robinson Township*, 83 A.3d at 957).

[5]     *See* Maj. Op. at 12 (citing *PEDF II*, 161 A.3d at 933).

[6]     *PEDF II*, 161 A.3d at 933.

financial gamesmanship and creative lease drafting that would empower the Commonwealth to subvert its fiduciary obligation as trustee not to engage in self-dealing. As we observed *in PEDF II*:

> [T]he Commonwealth, as trustee, has a constitutional obligation to negotiate and structure leases in a manner consistent with its Article 1, Section 27 duties. Oil and gas leases may not be drafted in ways that remove assets from the corpus of the trust or otherwise deprive the trust beneficiaries (the people, including future generations) of the funds necessary to conserve and maintain the public natural resources.

161 A.3d at 936.

Were the Commonwealth Court's decision to stand, the Commonwealth, through the Department of Conservation and Natural Resources ("DCNR"), could structure the terms of its lease agreements to maximize bonus, rental, and interest payments while concomitantly decreasing royalty payments, effectively increasing income from the exploration and development of Commonwealth land while diminishing income from the extraction of minerals. Front-loading Commonwealth leases would enable the General Assembly to maximize appropriations to the General Fund, depleting the natural resources by removing assets from the trust corpus, and would enable the Commonwealth, as trustee, to engage in self-dealing in violation of its fiduciary duties. Rather than encourage clever draftsmanship to maximize general appropriations, the ERA demands adherence to its purpose, which is to conserve and maintain the public natural resources as the corpus of the trust. As trustee, the Commonwealth, through DCNR, has a fiduciary duty to prevent and to remedy any degradation, diminution, or depletion of the Commonwealth's public natural resources and the rights of the beneficiaries thereto. The Commonwealth Court's holding would have encouraged the Commonwealth to draft leases to remove assets from the trust corpus or otherwise deprive trust beneficiaries of funds necessary for conservation.

Like all Pennsylvanians, members of the General Assembly are constrained to abide by the terms of the ERA. These constraints may well be a source of considerable frustration for today's legislators, as the oil and gas riches beneath the Earth's surface (or the scale and quantity of those riches) were perceived very dimly, if at all, at the time the ERA was adopted. But the answer is not for the General Assembly to find more creative ways of circumventing constitutional obligations. Generally speaking, the proper channel for those who believe that the underlying policies of a constitutional provision "are no longer viable due to new evidence or changed circumstances is via further revision to the Constitution through an appeal to the General Assembly and the citizenry based on the factual proofs and policy arguments which they consider relevant."[7] In this regard, it should be noted that the placement of the ERA in the Pennsylvania Constitution's Declaration of Rights "assumes that the rights of the people articulated in Article I of our Constitution—vis-à-vis the government created by the people—are inherent in man's nature and preserved rather than created by the Pennsylvania Constitution."[8] The extent to which the ERA, or any other inherent right recognized in the Declaration of Rights, may be amended constitutionally is not before us in today's appeal. What the Majority holds today is that the General Assembly is bound by the terms of the ERA and cannot through legislation supplant the mandate of the Constitution. With this proposition I wholeheartedly agree.

---

[7] *Driscoll v. Corbett*, 69 A.3d 197, 212 (Pa. 2013).

[8] *Robinson Township*, 83 A.3d at 948; Maj. Op. at 42; *see also Driscoll*, 69 A.3d at 209 (recognizing "that the prospect of constitutional amendments in derogation of truly core, indefeasible rights is highly problematic").